1

2

3                    UNITED STATES DISTRICT COURT

4               WESTERN DISTRICT OF WASHINGTON

5                            AT TACOMA

6   MEELI LOA, JR.,

7                                            Case No. 3:12-cv-05527-BHS-KLS
                                  Plaintiff,
8          v.                                REPORT AND RECOMMENDATION

9   CAROLYN W. COLVIN, Commissioner of       Noted for April 19, 2013
    Social Security, [1]
10
                                  Defendant.
11

12

13

14

15

16          Plaintiff has brought this matter for judicial review of defendant's denial of his

17   applications for disability insurance and supplemental security income ("SSI") benefits.  This

18   matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

19   636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

20   Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

21   undersigned submits the following Report and Recommendation for the Court's review,

22   recommending that for the reasons set forth below, defendant's decision to deny benefits should

23   be reversed and this matter should be remanded for further administrative proceedings.

24

25

26   [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
     Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
     Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
     docket accordingly.**

     REPORT AND RECOMMENDATION - 1

FACTUAL AND PROCEDURAL HISTORY

On July 15, 2008, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications disability beginning December 31, 2007, due to heart trouble, back pain, depression, vision and lung problems, and high blood pressure. See Administrative Record ("AR") 15, 141, 145, 175. Both applications were denied upon initial administrative review on November 18, 2008, and on reconsideration on April 16, 2009. See AR 15. A hearing was held before an administrative law judge ("ALJ") on September 14, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 30-77.

In a decision dated October 25, 2010, the ALJ determined plaintiff to be not disabled. See AR 15-25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 25, 2012, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On June 25, 2012, plaintiff filed a complaint in this Court seeking judicial review of defendant's final decision. See ECF #3. The administrative record was filed with the Court on August 27, 2012. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding him to be capable of returning to his past relevant work. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter

should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

REPORT AND RECOMMENDATION - 3

1

2    I.    The ALJ's Evaluation of the Medical Evidence in the Record

3          The ALJ is responsible for determining credibility and resolving ambiguities and

4    conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

5    Where the medical evidence in the record is not conclusive, "questions of credibility and

6    resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

7    642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

8    Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

9

10   whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

11   all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

12   within this responsibility." Id. at 603.

13         In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

14   "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

15   "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

16   stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

17   "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

18   draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

19   F.2d 747, 755, (9th Cir. 1989).

20         The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

21

22

23   _____

24         . . . It is immaterial that the evidence in a case would permit a different conclusion than that
     which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
25   substantial evidence, the courts are required to accept them.  It is the function of the
     [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
26   not try the case de novo, neither may it abdicate its traditional function of review.  It must
     scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
     rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2dat 1119 n.10.

REPORT AND RECOMMENDATION - 4

opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.    Dr. Widlan

Plaintiff challenges the ALJ's following findings regarding the medical opinion evidence in the record:

> On October 27, 2008, the claimant attended a psychological consultative examination with David Widlan, Ph.D. (Exhibit 2F).  Dr. Widlan interviewed the claimant and performed a mental status examination.  It was Dr. Widlan's opinion that the claimant had considerable deficits in memory, concentration,

and social reasoning although language difficulties appeared to play a role. The undersigned gives little weight to this opinion because the opinion appeared largely based on the claimant's self-reports and behavior that as discussed above is not credible, the opinion was inconsistent with the claimant's activities of daily living, and the opinion is inconsistent with the overall objective medical evidence of record that shows that although the claimant has mental impairments, they are medically manageable, they are not severe, and the claimant is not as limited in the ability to function as alleged.

AR 24. Plaintiff argues the above reasons for rejecting Dr. Widlan's opinion are not legitimate. While the undersigned agrees that not all of those reasons were valid, overall the ALJ did not err in rejecting the opinion of Dr. Widlan.

The undersigned agrees the ALJ erred in rejecting Dr. Widlan's opinion for the reason that it appeared to be largely based on plaintiff's self-reports. A physician's opinion premised largely on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d 595 at 601. As noted by plaintiff, however, "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [physician] does not discredit those complaints and supports his ultimate opinion with his own observations." Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

As in Ryan, there is "nothing in the record to suggest" Dr. Widlan relied on plaintiff's own "description of h[is] symptoms . . . more heavily than his own clinical observations." Id. at 1200. Indeed, although Dr. Widlan clearly considered plaintiff's self-reports, he also performed a mental status examination that included his own personal observations of his behavior. See AR 242-44; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting diagnosis of depression is competent medical evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (when mental illness is basis of disability claim,

REPORT AND RECOMMENDATION - 6

1  clinical and laboratory data may consist of diagnoses and observations of professionals trained in

2  field of psychopathology); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (mental

3  status examination results provide basis for diagnosis of psychiatric disorder just as results of

4  physical examination do so for physical illness or injury diagnosis).

5          The undersigned also agrees with plaintiff that the ALJ erred in rejecting the opinion of

6  Dr. Widlan based on his activities of daily living.  Although this can be a valid basis for rejecting

7  a medical opinion,[3] the activities of daily living the ALJ appears to have relied on to do so do not

8  for certain call into question the credibility of plaintiff's allegations of disabling symptoms and

9  limitations.  A claimant's credibility may be discounted on this basis if he or she "is able to

10 spend a substantial part of his or her day performing household chores or other activities that are

11 transferable to a work setting," or if the claimant's daily activities "contradict his [or her] other

12 testimony." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Smolen, 80 F.3d at 1284 n.7.  The

13 ALJ described plaintiff's activities as follows:

14

15          . . . The claimant reported that he lived with his wife and three children, and
            that his daily activities including helping his children get ready for school, and
16          transporting them to and from school. (Exhibit 5E/1).  The claimant reported
            that he had no problem taking care of his personal care needs such as dressing,
17          bathing, and shaving. (Exhibit 5E/2).  The claimant also reported that he could
            fix himself sandwiches and use the microwave. (Exhibit 5E/3).  According to
18          the claimant he could do laundry, iron sometimes, and help his children with
            their clothing to get them ready for school. (Exhibit 5E/3).  The claimant
19          reported that he would go outside twice a day, he could go outside alone, and
            he could shop in stores. (Exhibit 5E/4).  The claimant reported one of his
20          hobbies was cooking. (Exhibit 12F/36).

21
22 AR 19.  The record, however, fails to show how much time plaintiff spent performing household

23 chores or other similar activities.  For the same reason, the other daily activities the ALJ noted –

24

25

26 [3] See Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from
   marked limitations in part on basis that other evidence of claimant's ability to function, including reported activities
   of daily living, contradicted that conclusion).

REPORT AND RECOMMENDATION - 7

e.g., helping his children get ready for and transporting them to school, going outside alone and having a cooking hobby – do not necessarily contradict plaintiff's other testimony.

That being said, the undersigned disagrees with plaintiff that it was impermissibly vague for the ALJ to reject Dr. Widlan's opinion on the basis that it was "inconsistent with the overall objective medical evidence of record" showing plaintiff's mental impairments to be medically manageable. AR 24.  It is true that it is insufficient for an ALJ to reject the opinion of a treating or examining physician by merely stating, without more, that there is a lack of objective medical findings in the record to support that opinion. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).  But the ALJ's conclusions regarding Dr. Widlan's opinion must be read in the context in which they are set forth.  That is, within the larger and fairly detailed summary and analysis of the other objective medical evidence in the record the ALJ provided. See AR 22-24.

Plaintiff, furthermore, has not specifically challenged that summary and analysis,[4] which accurately describes the lack of indication of significant functional limitations stemming from his alleged mental impairments shown by the medical evidence in the record, including the progress notes and findings contained therein from Rich Ater, ARNP, discussed in greater detail below. See AR 223-26, 305, 307-09, 314-15, 319-20, 325, 327, 331-32, 366, 373-74, 386, 392, 396-97, 399, 405-06, 421-25, 433-41, 453-54, 572-73, 581, 585, 591, 597, 615-16, 622, 634; Batson, 359 F.3d at 1195 (physician's opinion need not be accepted by ALJ if it is inadequately supported by clinical findings or "by the record as a whole").  Accordingly, while not all of the ALJ's reasons for rejecting Dr. Widlan's opinion were valid, this reason constitutes both a valid and sufficient basis for doing so.

---

[4] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

REPORT AND RECOMMENDATION - 8

1

2    B.    Nurse Ater

3    Plaintiff next challenges the following findings made by the ALJ:

4    The claimant's records include opinions from Rich Ater, ARNP.  Nurse Ater
     reported in January of 2009 that the claimant suffered from PTSD, any stress
5    exacerbated his condition, and he would be unable to work for twelve months.
     (Exhibit 7F).  Nurse Ater completed a [state agency] form in April of 2009,
6    reporting the claimant had some marked and severe limitations in cognitive
     and social functioning. (Exhibit 13F/4).  In August of 2010, Nurse Ater
7    completed a medical source statement finding the claimant had numerous
     marked limitations in his ability to function. (Exhibit 16F).  The undersigned
8    gives little weight to this opinion from a non-acceptable medical source
     because it is unsupported by his own treatment records that showed the
9    claimant improved on medication (Exhibit 12F/56), descriptions of him as
     cheerful and clinically stable (Exhibit 12F/53), he did not consider the effects
10   of the claimant's alcohol use (Exhibit 15F/101), it appears largely based on
     the claimant's subjective reports, it is inconsistent with the claimant's reports
11   of daily activities that include caring for children, and it is inconsistent with
     the overall evidence of record that the claimant is not as limited in his ability
12   to function by his mental impairments as alleged.

13
     AR 23.  Specifically, plaintiff argues that in rejecting Nurse Ater's opinions here, the ALJ was in
14
     violation of Social Security Ruling ("SSR") SSR 06-03p, 2006 WL 2329939.  That ruling
15
     provides that the opinion of an "other medical source" such as a registered nurse – who is "not
16
     technically deemed to be" an "acceptable medical source" (e.g., a licensed physician or licensed
17
     or certified psychologist) – nevertheless is considered "important and should be evaluated [by
18
     the ALJ] on key issues such as impairment severity and functional effects, along with the other
19
     relevant evidence in the" record. Id. at *3; see also Gomez v. Chater, 74 F.3d 967, 970-71 (9th
20
     Cir. 1996) (opinions of those who are not acceptable medical sources may be given less weight
21
     than opinions of those who are); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d).
22
            The ALJ in this case, however, did treat Nurse Ater's opinions in the manner mandated
23
     by SSR 06-03p.  Although the ALJ stated that those opinions came from "a non-acceptable
24
     medical source" (AR 23), this is in fact true given that Nurse Ater is not a licensed physician or a
25

26

REPORT AND RECOMMENDATION - 9

licensed or certified psychologist.  There is no indication from the language of the ALJ's decision, furthermore, that she actually rejected Nurse Ater's opinions on this basis.  Rather, as set forth above, the ALJ gave other specific reasons for rejecting them.  One of them was the lack of treatment notes from Nurse Ater himself supporting the level of functional restriction he assessed.  See AR 305, 307-08, 325, 332, 366, 386, 392, 399, 405-06, 437-38, 572-73, 581, 585, 597, 616.  This was proper.  See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings).

Likewise, because of that lack of supporting objective clinical findings, the ALJ also was not remiss in rejecting Nurse Ater's opinions on the basis that they appeared to be largely based on plaintiff own subjective reports.  See Morgan, 169 F.3d 595 at 601 (medical opinion premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted); see also Tonapetyan, 242 F.3d at 1149.  Plaintiff complains that the ALJ specifically cited only two of Nurse Ater's treatment notes to support her findings here.  See AR 23 (citing AR 392, 396).  But as discussed above, Nurse Ater's treatment records overall fail to provide objective clinical findings that would support the level of limitation assessed, strongly indicating he relied primarily on plaintiff's subjective complaints and self-reporting of symptoms.

Plaintiff further takes issue with the ALJ finding he improved on medication, arguing that while Nurse Ater acknowledged that medication had lessened his symptoms, he did not find it had been fully resolved.  But again nothing in Nurse Ater's treatment notes or clinical findings reveal that plaintiff's mental health condition caused the level of functional impairment he found existed.  Thus, even if it is true that Nurse Ater did not opine that plaintiff experienced complete resolution of symptoms, neither do Nurse Ater's records show a significant, let alone disabling,

level of limitation remained.  The undersigned does agree with plaintiff that evidence of his use

of alcohol and engagement in daily activities contained in the record do not necessarily

contradict his allegations of disability or call into question Nurse Ater's ability to properly assess

his functional capabilities.[5]  Nevertheless, as discussed above, the ALJ provided other valid

reasons for rejecting Nurse Ater's opinions.

C.      Dr. Lewy and Dr. Gardner

Lastly in terms of the medical evidence in the record, plaintiff finds fault with the ALJ

finding as follows:

> State agency medical consultant Arthur L. Lewy, Ph.D., completed a
> psychiatric review technique form in November of 2008. (Exhibit 5F).  Dr.
> Lewy reviewed the claimant's medical records [sic] it was Dr. Lewy's opinion
> that the claimant had no limitation in activities of daily living, mild limitation
> in maintaining social functioning, mild limitation in maintaining
> concentration, persistence, or pace, and no episodes of decompensation.  In
> April of 2009, state agency medical consultant Jerry Gardner, Ph.D., reviewed
> the claimant's medical records and affirmed Dr. Lewy's assessment of the
> claimant's functioning. (Exhibit 10F).  The undersigned gives significant
> weight to these opinions because they were based on a thorough review of the
> claimant's medical records, the opinion as to the claimant's abilities was
> supported with references to the objective medical evidence, and the opinions
> are consistent with the overall objective evidence of record.

AR 23.  Plaintiff argues it was legal error for the ALJ to reject the opinions from Dr. Widlan and

Nurse Ater in favor of those from Drs. Lewy and Gardner, because the latter opinions "were not

consistent with other medical evidence in the record." ECF #12, pp. 13-14.  But other than the

opinions from Dr. Widlan and Nurse Ater, which as just discussed the ALJ properly rejected, the

overall medical evidence in the record – once more including the treatment notes from Nurse

---

[5] For example, while as discussed in greater detail below, the record supports the ALJ in discounting the credibility
of plaintiff on the basis of his inconsistent statements regarding alcohol use, the ALJ points to no evidence in the
record that such use actually impacted how plaintiff functioned either during or outside of his mental health
evaluations.  In addition, as discussed above, the evidence in the record regarding plaintiff's activities of daily living
– including his reported caring for his children – have been shown to not have been performed at a level necessarily
inconsistent with his allegations of disabling symptoms and limitations.

REPORT AND RECOMMENDATION - 11

Ater himself – is largely in line with a lack of significant, let alone disabling, mental functional limitations as found by the ALJ.  Accordingly, here too there was no error.

II.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

REPORT AND RECOMMENDATION - 12

The ALJ in this case found plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [to be] not credible to the extent they [we]re inconsistent with the [ALJ's] residual functional capacity assessment." AR 21.  At the outset, plaintiff argues the ALJ performed an improper credibility assessment asserting that:

> Knowing that [plaintiff] had been assessed with mental impairments that caused confusion and memory problems; that he was on pain medication; and that he was not terribly proficient in the English language, the ALJ took an inappropriate adversarial approach at the hearing, cross-examining [him] and suggesting that he had ulterior motives for seeking benefits.

ECF #12, p. 15 (internal footnote omitted) (citing Moran v. Astrue, 569 F.3d 108, 112 (2nd Cir. 2009) ("Social Security disability determinations are 'investigatory, or inquisitorial, rather than adversarial.'") (citation omitted).

The undersigned disagrees that the ALJ did anything improper here.  First, while the ALJ asked questions at the hearing that may have been more probing or pointed than plaintiff may have liked or deemed appropriate, the portions of the transcript plaintiff cites fail to show the ALJ took an adversarial approach to the proceeding, as opposed to, say, merely attempting to resolve certain ambiguities or conflicts she found in the evidence in the record or obtain more specific information from plaintiff concerning his allegations and complaints.  See ECF #12, pp. 16-17 (citing and quoting AR 38, 41-42, 44-45, 54).  The undersigned also does not find any impropriety in ALJ's statement that plaintiff's issues with English "may be a language barrier to some extent" for him, "the overwhelming evidence of record . . . shows that [he] is not credible regarding the extent of his limitations," and that "the . . . alleged 'poor memory' exhibited during his hearing is attributed to evasiveness." AR 22.

Clearly there is some evidence, as noted by the ALJ, that plaintiff has, or may have, had some problems communicating in English at times, which has been commented on by some of

REPORT AND RECOMMENDATION - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

his mental health treatment providers and examiners. See AR 223, 225, 242-45, 375-76.  On

many more occasions, however, no such problems were noted to exist. See AR 305, 307-09, 314-

15, 319-20, 325, 327, 332, 366, 373-74, 386, 392, 396-97, 399, 405-06, 421-25, 433-41, 453-54,

572-73, 581, 585, 591, 597, 599-600, 615-16, 622, 634.[6]  In addition, on at least one occasion

where potential language barriers were noted, it was posited that plaintiff's problems could have

been due to "very limited motivation" as well. AR 628.  As discussed in greater detail below,

furthermore, there is evidence of various inconsistent statements plaintiff has made with regard

to his past work, military and alcohol history that supports the findings concerning evasiveness

the ALJ made.  Given that it is the duty solely of the ALJ to resolve conflicts and ambiguities in

the evidence, and the mixed nature thereof in this case noted above, the ALJ's findings as to the

English language issue also was reasonable and as such will not be overturned.

In terms of the inconsistent statements referenced above, the ALJ found in relevant part

as follows:

> . . . The claimant reported in August of 2008 that he had been sober for a year
> and his last illegal drug use was at that time. (Exhibit 1F/13).  The claimant
> reported in September of 2008 that he was clean and sober for three years.
> (Exhibit 1F/4).  The claimant next reported in October of 2008 that he quit

---

[6] This inconsistency in the evidence in the record regarding the nature and severity of plaintiff's alleged language barrier problems was further recognized by the ALJ.  For example, the ALJ specifically noted that while plaintiff attended one medical appointment with an interpreter in September 2008, "indicating he could not speak or comprehend English," "[d]uring other healthcare visits, no difficulty communicating was reported," and plaintiff "was able to relay history." AR 21.  In addition, the ALJ pointed out that plaintiff had been able "to apply for benefits face-to-face . . . with no reported difficulty in reading, understanding, or concentrating, and no need for an interpreter." Id.  While plaintiff argues that a notation in the record indicating he came to the state agency interview five hours early because he misunderstood the message left for him, there is no indication in that notation that the misunderstanding was due to language problems. See AR 172.  The ALJ also noted plaintiff "was able to respond to questions in English during the hearing." Id.  Although the transcript of the hearing does indicate some limitations in plaintiff's ability to express himself that could be due to problems with the English language, it shows plaintiff for the most part was able to understand and respond to questioning by the ALJ and plaintiff's attorney, and thus this fact largely supports the ALJ's determination here.  In addition, even if plaintiff's assertion that he had more issues communicating and understanding what was being said to him than found by the ALJ is reasonable, the ALJ's own interpretation of what transpired at the hearing is at least equally so – particularly given that the ALJ herself was there – and therefore that interpretation must be upheld. See Allen, 749 F.2d at 579 (if evidence admits of more than one rational interpretation Commissioner's decision must be upheld.)

REPORT AND RECOMMENDATION - 14

drinking five years earlier. (Exhibit 2F/1).  The claimant reported in July of 2009 that he drank monthly or less, and would have one or two drinks at a time. (Exhibit 15F/101).  The claimant testified that he could not remember the last time he used alcohol.  The claimant's variety of reports regarding his alcohol use indicates he also may not be entirely credible regarding other issues.

. . .

The claimant testified that he was "not sure" whether it was his handwriting or whether he completed Exhibit 4E his work history report, and he denied he was a "lead man" electrician or a supervisor although this was reported on his work history report.  The claimant denied he was self-employed in construction as reported in Exhibit 3E.  However, the claimant testified that he did complete Exhibit 5E, which contains the same handwriting used to complete Exhibit 4E.

The claimant's record is inconsistent regarding his military service and reasons for discharge.  The claimant reported to his health care provider that he saw combat while serving in Dessert Strom [sic]. (Exhibit 1F/4.13).  However, the claimant also reported he was only in the army for six months in 1979, and he was discharged due to depression and anxiety from being away from his family. (Exhibit 2F/1).  The claimant later reported that he did not serve in Dessert Storm. (Exhibit 2F/1).  The claimant later reported that he did not serve in Dessert Storm. (Exhibit 12F/96).  The claimant testified that he was discharged due to depression and PTSD.

AR 21.  Plaintiff attempts to explain the discrepancies in his work history statements by asserting the explanation for those discrepancies he gave at the hearing was reasonable.  But again, at most this constitutes one possible explanation of what occurred.  The ALJ's interpretation was equally plausible, however, particularly in light of the sameness of the handwriting on the forms and the fact that one of those forms clearly was filled out by plaintiff, as plaintiff himself admitted. [7]  As

---

[7] For example, plaintiff asserts he "explained at the hearing that the owner of the company had included supervising in the job description, but that he did not actually supervise anyone," and that "he had not work as a lead electrician (he was a journeyman electrician) and never worked as a construction worker." ECF #12, p. 19 (citing and quoting AR 52-53, 176).  He also asserts that he was unsure if he or his wife had filled out his work history paperwork, first testifying that he did not think he had done so "because he was not 'good on the writing,'" and then later testifying that his wife helped him because she understood the forms clearly and due to his handwriting. Id. (citing and quoting AR 65-66, 73).  But plaintiff has not shown this explanation to be any more plausible – again, particularly in light of the sameness of the handwriting samples – than the ALJ's determination that plaintiff simply was not being truthful on this issue.

REPORT AND RECOMMENDATION - 15

for the issue of his military service, plaintiff argues that "[i]t is unknown whether the [military service] record in question accurately recounted [his] testimony." ECF #12, p. 20.  But there also is no evidence that it was inaccurate, and thus this basis for asserting error on the ALJ's part is without merit, given the burden of proof to establish such error is on plaintiff.[8]

Plaintiff goes on to argue that even if his military service record "was accurate, the ALJ erred in finding that this inconsistency detracted from [his] credibility, given the consistency of [his] subsequent testimony and his language and cognitive problems." ECF #12, p. 20.  Plaintiff, however, does not specify what in his subsequent testimony is consistent or how that alleged consistency bears on the specific issue of the inconsistency concerning his military history.  As discussed above, furthermore, the ALJ did not err in regard to either her evaluation of the medical evidence in the record concerning his alleged mental health impairments or problems with the English language.  To the extent plaintiff makes those same arguments concerning the inconsistencies in the record regarding his reported alcohol history, they are found to have no merit for the same reasons, and thus are rejected as well.

The ALJ also discounted plaintiff's credibility because:

There is evidence of record that the claimant is not entirely motivated to work. The claimant participated in a vocational rehabilitation program through the Veterans Administration, and brought with him to an appointment an application for employment at Goodwill. (Exhibit 12F/32).  The claimant wanted to know if applying for jobs would impact his application for disability benefits.  [H]owever, the claimant was encouraged to wait until he has been offered employment before worrying about benefits. (Exhibit 12F/32).  The claimant reported in September of 2009 that he did not think he really wanted to look for a job, he was concerned about work and the impact on his disability benefits, and the claimant was described as not motivated to search for employment although he had transferrable skills. (Exhibit 15F/85).

---

[8] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At steps one through four of that sequential disability evaluation process the burden of proof, as noted above, remains the claimant's. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

REPORT AND RECOMMENDATION - 16

AR 22.  The ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony.  See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).   Plaintiff argues it is improper to discount the credibility of those claimants who "legitimately believe they are disabled, but either need to support themselves while their case[s are] pending or want to try and see if they can handle part-time work." ECF #12, p. 20-21.

The problem for plaintiff, though, is that the evidence in *this* case does not show the argument he makes here is applicable to *him*.  As noted by the ALJ, plaintiff expressly told his vocational rehabilitation counselor in early September 2009, that "I really don't think I want to look for a job." AR 599.  This strongly suggests a lack of motivation to return to work, rather than a desire but inability to do so as asserted by plaintiff.[9]  So does the comment made by his vocational rehabilitation counselor earlier that year following his inquiry as to whether applying for jobs might impact his grant of disability benefits, that his apparent inability "to independently job search" could be "due to very limited motivation." AR 628.

Lastly, the ALJ found plaintiff to be not fully credible because "[t]here is no objective evidence to support the alleged severity and limiting effects of [his] physical impairments." AR 22; see also AR 23.  A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff does not specifically challenge this reason for discounting his credibility, and the objective medical evidence in the record does not appear to contradict the ALJ here.  Accordingly, this too was a proper basis for

---

[9] Indeed, the vocational rehabilitation counselor at the time specifically noted that plaintiff was "not motivated at present to search for employment." Id.

REPORT AND RECOMMENDATION - 17

1  discounting plaintiff's credibility.

2  III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

3          Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

4  take into account," unless the ALJ "expressly determines to disregard such testimony and gives

5  reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

6  2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

7  germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

8  link his determination to those reasons," and substantial evidence supports the ALJ's decision.

9
10  Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

11  694 F.2d at 642.

12          With respect to the lay witness evidence in the record, the ALJ found as follows:

13
14      The claimant's records include a letter from Rev. Joseph Wellington, Director
        of the Samoan-Pacific Islanders Association. (Exhibit 6E).  Mr. Wellington
15      reported the claimant had problems with depression, anger, and anxiety, and
        was undertaking treatment through a Veteran's hospital.  The undersigned
16      [sic] little consideration to this evidence because the evidence is not
        persuasive of additional limitations to the claimant's residual functional
17      capacity, in part because the nature and extent of the relationship is unclear.

18  AR 24.  Plaintiff argues the ALJ erred in rejecting the lay witness evidence for the above stated

19  reasons, asserting that "[i]f the ALJ was unclear about [the] role [of the lay witness], she should

20  have asked [plaintiff] or [the lay witness]." ECF #12, p. 21.  An ALJ has the duty "to fully and

21  fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan,

22  242 F.3d at 1150 (citations omitted).  However, it is only where the evidence in the record is

23  ambiguous or the ALJ has found "the record is inadequate to allow for proper evaluation of the

24  evidence," that the duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted);

25  see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).

26
REPORT AND RECOMMENDATION - 18

The ALJ in this case, though, did not find the record to be inadequate to allow for proper evaluation of the evidence contained therein.  The undersigned also does not find the lay witness evidence to be ambiguous in the sense necessary to trigger the ALJ's duty to inquire further into the nature of the relationship between plaintiff and the lay witness.  This is because the statement that witness provided begins with the phrase "Greetings from the Samoan-Pacific Islanders and Polynesian community," and then proceeds to talk in terms of "we" as opposed to the singular "I" that would be expected from someone with personal knowledge of plaintiff. See AR 198-99. That is, there is no indication that the author himself knows plaintiff personally, or if he does know plaintiff, to what extent.  Thus, there is no indication that further inquiry would yield any additional useful information specific to plaintiff.  Perhaps more importantly, however, as noted by the ALJ the lay witness statement yields little, if any, additional information regarding actual work-related functional limitations, as opposed to the mere existence of mental impairments and symptoms related to those impairments or stemming therefrom.[10]

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of th[e sequential disability evaluation] process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

Residual functional capacity is the maximum amount of work the claimant is able to

---

[10] "The mere existence of an impairment is insufficient proof of a disability" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

REPORT AND RECOMMENDATION - 19

1    perform based on all of the relevant evidence in the record. See id.  However, an inability to

2    work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ

3    must consider only those limitations and restrictions "attributable to medically determinable

4    impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

5    claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

6    accepted as consistent with the medical or other evidence." Id. at *7.

7         Here, the ALJ found plaintiff had the residual functional capacity to perform the full

8    range of light work. See AR 20.  Plaintiff argues the ALJ erred in so finding, because this RFC

9    assessment fails to adequately reflect all of his mental functional limitations, including those Dr.

10   Widlan and Nurse Ater found.  As discussed above, however, the ALJ did not err in evaluating

11   the medical evidence in the record from these two opinion sources.  Nor for that matter, also as

12   discussed above, did the ALJ err in discounting plaintiff's credibility or rejecting the statement

13   from the lay witness in the record, such that any additional functional limitations stemming from

14   plaintiff's testimony or the lay witness statement should have been adopted as well.

15   V.   The ALJ's Step Four Determination

16        At step four of the sequential disability evaluation process, the ALJ found plaintiff to be

17   capable of performing his past relevant work as a maintenance supervisor both as it actually and

18   generally is performed. See AR 24-25.  The claimant has the burden at step four to show that he

19   or she is unable to return to his or her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-

20   99 (9th Cir. 1999).  First, plaintiff argues that when the vocational expert was provided with the

21   functional limitations assessed by Dr. Widlan and Nurse Ater, that expert testified that all of the

22   past relevant jobs identified could not be performed and that he would be disabled.  As discussed

23   above, though, the ALJ properly rejected the functional limitations assessed by Dr. Widlan and

REPORT AND RECOMMENDATION - 20

1   Nurse Ater, and therefore was not required to include them in her assessment of plaintiff's RFC

2   or use them to determine whether he could perform those jobs.  Accordingly, the ALJ also was

3   not required to adopt the vocational expert's testimony on this issue.

4       Next, plaintiff argues "it is inconceivable that he could perform" the job of maintenance

5   supervisor as defined by the Dictionary of Occupational Titles ("DOT"), in light of the difficulty

6   he had answering simple questions at medical appointments, his Social Security interview and

7   the hearing. ECF #12, pp. 22-23.  But this is essentially the same as arguing – as he previously

8   did – that the ALJ should have found him to be credible in regard to his subjective complaints

9   and allegations of disability and should have adopted the limitations Dr. Widlan and Nurse Ater

10  assessed, but which as discussed above the ALJ did not err in declining to do.  As to plaintiff's

11  assertion that the DOT's description of the job of maintenance supervisor is not an accurate

12  description of how he actually performed that job, as also discussed above the ALJ declined to

13  find him credible regarding what he actually did in that job.

14      That being said, the ALJ in fact did find plaintiff could perform the job of maintenance

15  supervisor as it was actually performed.  The only evidence upon which the ALJ could rely on to

16  do so, furthermore, had to come from plaintiff's self-reporting, which indicates he performed that

17  job at a level above the light exertional. See AR 185; DOT 891.137-010, 1991 WL 681354; 20

18  C.F.R. § 404.1567(b), (c), § 416.967(b), (c).  As discussed in greater detail below, however, the

19  ALJ found plaintiff at most was capable of performing the full range of light work. See AR 20.

20  Accordingly, the determination that plaintiff could return to his past relevant work as it actually

21  was performed is in error and therefore cannot stand, given that it is inconsistent with the ALJ's

22  finding regarding plaintiff's capacity for exertional work.

23      The undersigned also agrees with plaintiff that the record fails to show him to be capable

REPORT AND RECOMMENDATION - 21

of performing the job of maintenance supervisor as it is generally performed as found by the ALJ as well.  This is because as plaintiff points out the DOT describes that job as requiring a Specific Vocational Profile ("SVP") of Level 7.  See DOT 891.137-010, 1991 WL 681354.  SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  DOT, Appendix C, 1991 WL 688702.  An SVP of 7 requires "[o]ver 2 years up to and including 4 years."  Id.  The record, however, indicates that plaintiff performed the particular past relevant work at issue here for a period much shorter than that.  See AR 176, 182.  To constitute past relevant work, the job at issue must have "lasted long enough for [the claimant] to learn to do it."  SSR 82-62, 1982 WL 31386 *1.  Because it appears that plaintiff did not perform the job of maintenance supervisor long enough to learn to do it according to the DOT[11] – and because there is no vocational expert testimony supported by the evidence in the record to contradict the DOT on this issue[12] – the ALJ's step four determination cannot stand.

VI.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits."  Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate."  Id.

---

[11] At step four of the sequential disability evaluation process, the Commissioner relies primarily on the DOT "about the requirements of work in the national economy." SSR 00-4p, 2000 WL 1898704 *2.

[12] The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

REPORT AND RECOMMENDATION - 22

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Issues still remain as to whether plaintiff is in fact disabled. As discussed above, the ALJ found plaintiff to be capable of performing his past relevant work. Because of this, the ALJ did not go on to determine whether plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore whether he was disabled, as step five of the sequential disability evaluation process.[13] Thus to determine whether or not plaintiff ultimately should be found to be disabled, a step five determination by the Commissioner is required, which warrants remand in this case.[14]

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

---

[13] <u>See</u> 20 C.F.R. § 404.1520 (if determination of non-disability is made at any particular step of sequential disability evaluation process, sequential evaluation process ends at that step).

[14] <u>See</u> <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); <u>see also</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's decision based on evidence ALJ did not discuss).

REPORT AND RECOMMENDATION - 23

1    Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

2  72(b), the parties shall have **fourteen (14) days** from service of this Report and

3  Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file

4  objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>,

5  474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

6  is directed set this matter for consideration on **April 19, 2013**, as noted in the caption.

7    DATED this 1st day of April, 2013.

8

9

10

11

12    Karen L. Strombom
     United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 24